CLARK and DOUGLAS, JJ., dissenting.
The question for decision in this case is this: Was it the duty of the defendants to assess for taxation, in 1901, the franchises of the railroad companies in this State separately from the assessment of their tangible property? The failure of the defendants to (386) make such separate assessments (admitted in their answer) is the matter complained of by the plaintiff, and as a support for the correctness of the view expressed above as to what the question for decision is, allegation three of the complaint is inserted: "That the defendants, as members of the said North Carolina Corporation Commission, have failed and refused to assess for taxation and determine the value of the intangible property of the railroad companies in this State, to wit, the franchises, separately from the assessment of the tangible property, as they are directed to do by sections 43 and 50, ch. 7, Public Laws, 1901, and have failed and refused to attempt to make such valuation and assessment, and have failed and refused to determine, or attempt to determine, the market value of the capital stock, certificates of indebtedness, bonds and other securities of said companies in their assessment of the properties of said companies."
The defendants, in their answer, do not admit that the pertinent sections of the Machinery Act of 1901 require them to make assessments of franchises of railroad companies separately in any year before or after 1903, and in the brief of their counsel it is argued at length that *Page 265 
the writ of mandamus should not be granted because the alleged duties, the performance of which was sought to be enforced against the defendants, were discretionary in their character and required the exercise of judgment on their part. There is no room for such an argument here. No discretion is given the defendant by the General Assembly in sections 43, 48 and 59, chapter 7, of the Machinery Act of 1901, as to the manner and method of assessing the physical property and the franchise valuation of railroad companies.
The rules by which they are to be guided in making these assessments are clearly prescribed, their judgment and discretion being allowed only in one instance, viz., when they are to consider of the actual cost to replace the property with a just allowance for depreciation on (387) rolling stock, and also of other conditions to be considered, as in the case of private property, when they come to value the physical or tangible properties of the companies. All else is mandatory.
The Machinery Act of 1899 gave to the defendants discretion in the matter of assessing the taxes on the property of the railroad by authorizing them, in making their assessment, to consider the value of the franchise, without formulating any rules by which that valuation and assessment should be discovered. But the Legislature of 1901 put an end to that discretion, and laid down special and particular rules by which the real property shall be valued and the franchise shall be estimated, and required separate assessments. There can be no doubt about the power of the State to have levied a franchise tax on corporations. Const., Art. V, sec. 3. And there can be no doubt that the franchise tax may be assessed separately from the tangible property assessment.
As we have seen, the State has done those things in the Machinery Act of 1901, and the question arises, When did, or do, these assessments go into effect? That is the only uncertainty about the matter in dispute, and the answer to the question, of course, depends upon whether section 50 of the Machinery Act was in force in June, 1891, or whether its operation was postponed by clear implication, deduced from the language of section 48 of that act. Without doubt, the assessment or valuation for taxation upon the tangible property and that upon the franchise, is to be made at the same time. The language of the statute, as to the time, being: "The said commissioners shall first determine the value of the tangible property, . . . and they shall then assess the value of the franchise, which shall be determined by due consideration of the gross earnings as compared with the operating expenses, and particularly by consideration of the value placed upon the whole property by the public, the value of the physical property being (388) deducted as evidenced by the market value of all capital stock, . . . and the aggregate value of the physical or tangible property and *Page 266 
the franchise as thus determined shall be the true value of the property for the purpose of an ad valorem taxation, and shall be apportioned," etc.
By our laws for generations, there have been stated periods and times at which, under oath, owners of property were required to list, as it is commonly called, or return a schedule of their property, real and personal, for assessment for taxation by officers appointed for that purpose. All real estate, except that belonging to railroad companies, up to 1899, was assessed quadrennially (railroad property, real and personal, having been listed annually), and all personal property was listed and assessed in June, annually. By section 12 of chapter 7, Machinery Act, Laws 1901, the next assessment of real estate is to take place in June, 1903, and by section 48 of the same chapter, the real estate, rolling stock and such personal property of railroad companies, necessary for the construction, repairs or successful operation of such railroad lines, is to be listed or returned for taxation and assessment at the same time that other real estate is to be returned for assessment and taxation. Section 50 of the Machinery Act furnishes the manner and method of determining the value of the tangible property of railroad companies, and also of the franchises. The aggregate value of both, determined according to the prescribed method and manner, constitutes the true value of the entire property for the purpose of an ad valorem taxation. Now, can an ad valorem taxation be fixed upon the entire property of a railroad company, under section 50, except at the time fixed by law for the return of the real and personal property of the company for taxation and its assessment by the defendant commissioners? The answer seems to be found in the opening sentence of section 42 of the same act: "Upon the meeting of the Corporation Commission for the purpose (389) of assessing railroads and other property, they shall thereupon value and assess the property of each association, company, copartnership and corporation in the manner herein set forth, after examining such statements (statements made under section 40 of the same act), and after ascertaining the value of such properties thereupon, and upon such other information as they may have or obtain." As we have seen, the real and personal estates of railroad companies are to be returned, under oath, for assessment and taxation to the commission at such dates as real estate is required to be returned and assessed for taxation, and there is to be no further assessment of real estate until June, 1903. Then, if any assessment of the tangible property of the railroad companies should be made by the commission except at the time when by law that property is to be returned and assessed for taxation, would such assessment be legal? It would seem not. If, then, there can be no valid assessment of the tangible property of railroad corporations until 1903, how can a franchise tax be arrived at under *Page 267 
section 50? They stand or fall together. Without a knowledge of what the assessment of the tangible property amounts to, you could not discover what the franchise tax would be; for the franchise tax is "the market value of all the capital stock, certificates of indebtedness, bonds and other securities, due consideration being given to the gross earnings as compared with the operating expenses," less the physical or tangible property.
The contention of the plaintiff, that under section 49 of the same act the assessments made by the defendants of the real estate of the railroad companies in 1900 remains the assessment until June, 1903, and should be taken by the defendants as a valuation of the tangible property in determining the value of the franchise under section 50, can not be maintained, for the simple reason that that assessment was made on the real and personal property, and included in its value the (390) value of the franchise, and was therefore a different assessment from the one ordered to be made on the tangible or physical property in section 50 by the rule of determining its value by a consideration of the actual cost to replace the property, with a just allowance for depreciation on rolling stock, etc. Nor can an assessment be made by the commission upon the information contained in section 49, and that which that section authorizes the commission to secure, for the reason that such an assessment would be at a time different from the time fixed for the assessment of the property, of the tangible property, of railroads under section 48 of the same act.
If it should be objected to this opinion that, to be consistent, it embraces impliedly the view that there is no statute which fixes the assessment of the real and personal property of the railroad companies in this State, upon which taxes can be levied and collected, until the assessment provided for in June, 1903, by Laws 1901, ch. 7, sec. 12, it would have to be admitted that that is a fact. The act of 1899, ch. 15, sec. 43, required railroad companies to report, under oath, for assessment and taxation their real and personal property annually — on 1 June of each year; and in 1900 the railroad companies made such returns of their property, thereby complying with the law then in force in that respect. The act of 1901 repealed section 43 of chapter 15, Laws 1899, and required quadrennial assessments thereafter, to begin on 1 June, 1903, and did not continue the assessment of 1900 or that of 1899, or fixed any other to be the basis of taxation on railroad property until the assessment of 1903. This view does not conflict with the rule that the Revenue Laws of the State are to be considered as a series of laws, and to be construed together as a whole, when necessary to find out the meanings of doubtful provisions in the one last enacted. Section 12, ch. 7, Laws 1901, providesquadrennial assessments of railroad property, to *Page 268 
(391) begin 1 June, 1903; while section 43, chapter 15, Laws 1899, provides for annual assessments to be made on 1 June of each year. These two sections are palpably contradictory of each other, and so inconsistent that the last enacted repeals that of 1899. But that is none of our responsibility. It may have been a part of that compromise and settlement with the railroad companies of the State mentioned in the message of the Governor, and which message was filed by the defendants with their answer; but the General Assembly, in the act of 1901, as we have seen, did not incorporate it in that act. We have no evidence, as we have said before, that the assessment of 1899 or 1900, or any other, was adopted as the assessment that should prevail until 1903.
We have not invoked the aid of the Governor's message in coming to a conclusion in this case. The acts of Assembly which we have been considering were free from doubt, except as to the time when the franchise tax should be assessed separately from the tax on property; and it certainly would be a dangerous expedient for this Court to adopt as a rule of interpretation of a statute the consideration of a communication to the Legislature on the subject-matter of the statute.
It may not be that legislative bodies always carry out, or ought to carry out, the suggestions and recommendations addressed to them in messages by the Chief Executives of States.
We see no error in the action of the judge in dismissing the case.
No error.